IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:20-CR-244-FL-1

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | |
| JOSDANY BERNAL-SALINAS | ) | |

This matter came before the court for sentencing on August 9, 2022. The court memorializes herein reasons for overruling defendant's objections to calculation of defendant's advisory guideline base offense level presented in the Presentence Investigation Report's ("PSR").

## BACKGROUND

On October 12, 2021, pursuant to waiver of indictment and with a written plea agreement, defendant pleaded guilty to criminal information charging defendant with unlawful mailing of a firearm, in violation of 18 U.S.C. § 1715. The government agreed to dismiss the indictment charging defendant with knowingly possessing ammunition in and affecting commerce while knowing that he was an alien illegally and unlawfully in the United States, in violation of 18 U.S.C. §§ 922(g)(5)(A) and 924, at sentencing.

Prior to sentencing, the United States Probation Office prepared the PSR, which calculated defendant's criminal history level as I and his total offense level as 17, yielding an advisory guideline sentencing range of 24 to 30 months imprisonment. Pursuant to 18 U.S.C. § 1715, however, the maximum term of imprisonment is 24 months. Pertinent here, the probation office calculated defendant's total offense level by beginning with a base offense level of 20, determined pursuant to U.S.S.G. § 2K2.1(a)(4)(B). Under the probation office's calculation, defendant

received a two-level reduction under U.S.S.G. § 3E1.1(a) and a one-level reduction under U.S.S.G. § 3E1.1(b) for acceptance of responsibility, in accordance with the agreement between defendant and the government. The court adopted the PSR's findings and conclusions in large part, but denied defendant any guideline reduction for acceptance of responsibility based on his testing positive for marijuana use with sentencing looming. The court also overruled defendant's objections to determination of the base offense level under U.S.S.G. § 2K2.1(a)(4)(B).

Applying U.S.S.G. § 2K2.1(a)(4)(B), and without benefit of any reduction for acceptance of responsibility, the court determined defendant's total offense level to be 20, resulting in an advisory guideline sentencing range of 33 to 41 months. In compliance with 18 U.S.C. § 1715, however, the court sentenced defendant to 24 months.

## COURT'S DISCUSSION

A.  Defendant's Status as a "Prohibited Person" Under U.S.S.G. § 2K2.1(a)(4)(B)

Probation officer relied on U.S.S.G. § 2K2.1(a)(4)(B)(ii)(I) for its base offense level, reasoning defendant was a "prohibited person" by virtue of his immigration status. See U.S.S.G. § 2K2.1(a)(4)(B)(ii)(I) (apply a base level of 20 if: "the offense involved a semiautomatic firearm that is capable of accepting a large capacity magazine" and "defendant (I) was a prohibited person at the time the defendant committed the instant offense"). The commentary of that provision defines a "prohibited person" as "any person described in 18 U.S.C. § 922(g)," including "an alien . . . illegally or unlawfully in the United States." See U.S.S.G. § 2K2.1 cmt. 3.

Defendant contends he was not in fact "illegally or unlawfully in the United States" under 18 U.S.C. 922(g), and thus is not a "prohibited person" under U.S.S.G. § 2K2.1(a)(4)(B)(ii)(I), as during the relevant period he was lawfully present in the United States pursuant to the Deferred Action for Childhood Arrivals ("DACA"). To resolve defendant's objection the court therefore

2

had to determine whether the phrase "illegally or unlawfully in the United States" under 18 U.S.C. 922(g) refers to presence or status. For though DACA confers lawful "presence," it does not, as defendant concedes, confer lawful "status." See In re L–K, 23 I. & N. Dec. 677, 680-81 (BIA 2004) (distinguishing between status and presence); Frequently Asked Questions, U.S. CITIZENSHIP AND IMMIGR. SERV., https://www.uscis.gov/archive/frequently-asked-questions ("For purposes of future inadmissibility based upon unlawful presence, an individual whose case has been deferred is not considered to be unlawfully present during the period in which deferred action is in effect.").

The statute itself provides no definitional guidance on what it means to be "illegally or unlawfully in the United States," see 18 U.S.C. 921 (defining terms for purposes of the statute), and the United States Court of Appeals for the Fourth Circuit has not yet resolved the phrase's meaning. Other circuits, however, have determined that a defendant must show lawful status to avoid application of 18 U.S.C. 922(g). See, e.g., United States v. Lopez, 929 F.3d 783, 786 (6th Cir. 2019. In so determining in Lopez, the United States Court of Appeals for the Sixth Circuit provided the following:

> Section 922(g)(5)(A) as enacted by Congress bars aliens who are "illegally or unlawfully in the United States" from possessing a firearm. 18 U.S.C. § 922(g)(5)(A). Those terms—"illegally or unlawfully"—are not defined by the statute, but are pedestrian and clear. "Illegal" means "contrary to" or "forbidden by law[.]" BLACK'S LAW DICTIONARY 864 (10th ed. 2014); WEBSTER'S THIRD NEW INT'L DICTIONARY 1126 (2002). "Unlawful" means "[n]ot authorized by law[.]" BLACK'S LAW DICTIONARY 1771 (10th ed. 2014); WEBSTER'S THIRD NEW INT'L DICTIONARY 2502 (2002). Nobody here argues otherwise. Thus, the phrase "illegally or unlawfully in the United States" refers to aliens who are "in the United States" contrary to or without authorization by law. See United States v. Arrieta, 862 F.3d 512, 515 (5th Cir. 2017). And § 922(g)(5)(A) otherwise plainly states that such aliens must not possess firearms. . . .
>
> Equally clear is that [defendant] was an alien within the scope of § 922(g)(5)(A). [Defendant] himself all but admitted as much when he applied for relief under DACA, since to be eligible for relief he was required to attest that he "[h]ad no

> lawful status on June 15, 2012[.]" Frequently Asked Questions, U.S. Citizenship and Immigration Services, https://www.uscis.gov/archive/frequently-asked-questions. (That date is the date on which DACA was announced.) Nor did the Secretary's decision to grant [defendant] relief change his status as an alien "illegally or unlawfully in the United States." Secretary Napolitano herself described DACA as an "exercise of prosecutorial discretion," Memorandum from Secretary Janet Napolitano, Exercising Prosecutorial Discretion with Respect to Individuals Who Came to the United States as Children 1 (June 15, 2012)—discretion, specifically, not to seek removal of aliens who meet certain criteria, one of them being that they are in the country unlawfully. And in announcing the program the Secretary herself stated, correctly, that "[t]his memorandum confers no substantive right, immigration status or pathway to citizenship. Only the Congress, acting through its legislative authority, can confer these rights." Id. at 3. The Secretary's grant of deferred action under DACA therefore did not—and could not—change [defendant's] status as an alien "illegally or unlawfully in the United States" for purposes of § 922(g)(5)(A). Instead that relief represented only the Secretary's decision temporarily not to prosecute him for that status.

Id. at 785-86; see also United States v. Arrieta, 862 F.3d 512, 516 (5th Cir. 2017) (holding that because DACA does not confer or alter immigration status, 18 U.S.C. 922(g) is applicable in the case of an alien granted deferred action under DACA); United States v. Velarde-Pelayo, No. 2:17CR385 DS, 2018 WL 941717, at *3 (D. Utah Feb. 16, 2018) ("A recipient of deferred action under DACA continues to lack lawful immigration status, and is still prohibited from possessing a firearm pursuant to Section 922(g)(5), whether or not deferral under DACA is current or has been terminated."); United States v. Fierro-Morales, No. 17CR3096 WQH, 2018 WL 3126116, at *4 (S.D. Cal. June 26, 2018) ("In this case, the Court concludes that Defendant's acceptance into DACA announced by the Department of Homeland Security did not alter his immigration status or materially impact the determination whether he is 'illegally or unlawfully in the United States' pursuant to § 922(g)(5)(A).").

Defendant argues that the court should instead construe the phrase "illegally or unlawfully in the United States" to require only lawful presence based on the inclusion of the preposition "in," which defendant contends signifies presence. In so arguing, defendant cites to United States v.

4

Venegas-Vasquez, 376 F. Supp. 3d 1094 (D. Or. 2019), which found the phrase in question to be "grievously ambiguous" and applied the rule of lenity based in part in its use of "in." Id. at 1097. On the court's review, Venegas-Vasquez presently stands as an outlier in developing case law on this question.

On consideration of the two lines of cases, the court found better reasoned and more well-considered those decisions that tip the scale in the balance of deciding that immigration status rather than presence is key to the applicability of 18 U.S.C. § 922(g). The court accordingly added this case to that side of the scale.

B.  Applicability of U.S.S.G. § 2K2.1(a)(8) in Determining the Base Offense Level

Defendant contends that as he was convicted of violating 18 U.S.C. § 1715, the correct base level is 6 under U.S.S.G. § 2K2.1(a)(8). U.S.S.G. § 2K2.1(a)(8) ("6, if the defendant is convicted under . . . 18 U.S.C. § 1715."). Defendant argues that pursuant to United States v. Brock, 211 F.3d 88 (4th Cir. 2000), the lack of a "modifying phrase" in U.S.S.G. § 2K2.1(a)(8) precludes consideration of other base offense levels. Brock, 211 F.3d at 92.

In Brock, the Fourth Circuit considered whether the addition of two levels pursuant to U.S.S.G. § 2A6.1(b)(2) was legally inconsistent with selection of a base offense level of six pursuant to U.S.S.G. § 2A6.1(a)(2):

> § 2A6.1. Threatening or Harassing Communications
>   (a) Base Offense Level:
>     (1) 12; or
>     (2) 6, if the defendant is convicted of an offense under 47 U.S.C. § 223(a)(1)(C), (D), or (E) that did not involve a threat to injure a person or property.
>   (b) Specific Offense Characteristics
>     ....
>     (2) If the offense involved more than two threats, increase by 2 levels.

5

Brock, 211 F.3d at 90 (emphasis added).  The court noted that, "as a purely textual matter, it appears contradictory for a district court in selecting the base offense level to conclude that an offense 'did not involve a threat to injure a person or property,' U.S.S.G. § 2A6.1(a)(2), and yet enhance that base offense level on the basis that 'the offense involved more than two threats,' U.S.S.G. § 2A6.1(b)(2)."  Id.  Nevertheless, it determined that "[c]loser examination [was] required . . . because under the guidelines the term 'offense' takes on different meanings in different contexts."  Id. at 90-91.  "Thus, application of § 2A6.1(a)(2) could be compatible with an enhancement under § 2A6.1(b)(2) if 'offense' in § 2A6.1(a)(2) refers to the offense of conviction without including relevant conduct, while 'offense' in § 2A6.1(b)(2) includes relevant conduct."  Id.

In concluding that applicability of U.S.S.G. § 2A6.1(a)(2) includes consideration of relevant conduct, the court compared the section's modifying phrase, "that did not involve a threat to injure a person or property," with other sections that lacked such modifying phrase, including U.S.S.G. § 2K2.1(a)(8).  Compare U.S.S.G. § 2A6.1 ("6, if the defendant is convicted of an offense under 47 U.S.C. § 223(a)(1)(C), (D), or (E) that did not involve a threat to injure a person or property." (emphasis added)), with U.S.S.G. § 2K2.1(a)(8) ("6, if the defendant is convicted under . . . 18 U.S.C. § 1715.").  The court concluded that "despite the requirement of conviction under a particular statute, this modifying phrase indicates that relevant conduct should be considered in determining whether the appropriate base offense level is six."  Brock, 211 F.3d at 91.

Defendant interprets the court's analysis in Brock to mean that because U.S.S.G. § 2K2.1(a)(8) lacks a modifying phrase relevant conduct should not be considered and the base level automatically applied.  It does not necessarily follow, however, from the court's determination that

6

inclusion of a modifying phrase permits consideration of relevant conduct that the lack of such modifying phrase prohibits its consideration.

Here, while U.S.S.G. § 2K2.1(a)(8) does not include a modifying phrase, there are other parts of the section indicating application of U.S.S.G. § 2K2.1(a)(8) and a base offense level of 6 do not inevitably follow a conviction under 18 U.S.C. § 1715. In particular, U.S.S.G. § 2K2.1(a) directs the court to "apply the greatest" base offense level, signifying that defendant's conduct may fall under more than one provision. Here, while defendant was convicted under 18 U.S.C. § 1715, and so U.S.S.G. § 2K2.1(a)(8) could be applicable, where, as here, the court determines the defendant was a "prohibited person" at the time of the offense, U.S.S.G. § 2K2.1(a)(4)(B) also applies. As U.S.S.G. § 2K2.1(a)(4)(B) results in a greater offense level, 20 rather than 6, U.S.S.G. § 2K2.1(a) instructs that U.S.S.G. § 2K2.1(a)(4)(B) be applied.

In arguing to the contrary, defendant cites to U.S.S.G. Guideline Manual Amendment 804 (Nov. 1, 2016), which "amend[ed] § 2K2.1(a)(8) to provide a base offense level of 6 . . . for convictions under section 1715." In explanation, the Commission noted, "the lack of specific guidance for section 1715 offenses caused <u>unwarranted</u> sentencing disparity," and concluded that the corresponding changes to § 2K2.1 "would promote consistency in application and avoid <u>unwarranted</u> sentencing disparities." Id. (emphasis added). The Commision's commentary is entirely consistent with the application of U.S.S.G. § 2K2.1(a)(4)(B) where warranted by defendant's conduct and status meeting its additional requirements. Such application cannot be said to result in gratuitous sentencing disparities or undermine the generally consistent application of U.S.S.G. § 2K2.1(a)(8) to convictions under 18 U.S.C. § 1715. Indeed, to interpret the Commission's commentary otherwise would be in tension with U.S.S.G. § 2K2.1(a)'s direction to "apply the greatest" base offense level, as noted above.

7

Accordingly, defendant's objection that U.S.S.G. § 2K2.1(a)(8) and a base offense level of 6 should instead apply was overruled.

## CONCLUSION

For the reasons stated herein, the court overruled defendant's objections to application of U.S.S.G. § 2K2.1(a)(4)(B) and a resulting base offense level of 20.

SO ORDERED, this the 6th day of September, 2022.

_____
LOUISE W. FLANAGAN
United States District Judge